This is a termination of parental rights case.
The District Court of Cullman County, Juvenile Division, ordered the permanent termination of all parental rights of the mother and awarded the custody of the two children to the State of Alabama Department of Pensions and Security (DPS).
From this decree the mother, through able counsel, appeals, contending in the main that the evidence does not support the trial court's action in terminating her parental rights. We do not agree and affirm the trial court's action.
Viewing the testimony with the attendant presumptions of correctness, we find the following:
Susan Marie and Louis Otto, the two children involved, were at the time of the hearing four years old and three years old, respectively. Each child was fathered by a man not married to the mother.
DPS first became aware of Ms. Williams's children in 1981 when the youngest child was admitted to the hospital suffering from severe dehydration and malnourishment. The court granted temporary custody *Page 1349 
of both children to DPS in February of 1981, and they have remained in a foster home since that time.
There was testimony that the mother, who is thirty years old, is mentally handicapped. At different times, she has been a resident patient at the Partlow State School, Bryce State Hospital, and Lurleen Wallace Developmental Center. A psychological evaluation of her mental abilities suggested that her I.Q. was fifty-four.
The mother is able to read and write very little. She completed only the fourth grade in school, at which she was indefinitely suspended because of her uncontrollable and dangerous behavior.
The mother testified that she had never been employed and receives only a small monthly income for her disability.
As stated, the mother was not married to the children's father. In fact, she testified that both children had different fathers. At the time of the hearing, the mother was living with a sixty-one-year-old man in a house that has no running water or inside bathroom.
DPS has made efforts to help the mother regain custody of the children. The agency suggested that she continue her mental health counseling and keep taking the prescribed medication for her mental condition. There was evidence that she failed to do either.
DPS also suggested that the mother should live in a permanent location rather than move from home to home. Evidence was presented that the mother has no permanent residence and has moved several times since 1981. Many times DPS did not know where the mother was living.
Additionally, there was testimony that the mother was arrested several times on alcohol and assault related charges. In 1981, she married a physically and mentally handicapped man. There was evidence that later that year she beat her husband to a point that he required hospitalization. The two were divorced in September of 1982.
The children have both been diagnosed as mentally retarded. The youngest child's eyes are severely crossed and he has difficulty eating his food. The oldest child has an enlarged liver and refuses to permit her bowels to move. Both suffer from severe allergies and require constant attention because of their physical and mental conditions.
On April 5, 1984, DPS filed a petition for termination of parental rights and for permanent custody of both children. The petition was granted on July 3, 1984, and from this decree the mother appeals.
At this point we note, as in other cases heard ore tenus, the decision of the trial court is presumed correct and will not be set aside unless it is so contrary to the evidence as to be plainly and palpably wrong. Stone v. State, Department ofPensions and Security, 421 So.2d 129 (Ala.Civ.App. 1982).
In every case of this nature, the controlling consideration is the best interests of the child. In order to determine the child's best interests, the trial court may examine the conduct and activities of the parent. In re Shivers, 440 So.2d 1081
(Ala.Civ.App. 1983).
In view of the facts as set out above, the mother's mental ability, her past behavior, her lack of a permanent residence and employment, her failure to improve her "parenting" skills, and the mental and physical condition of the children, this court cannot say that the trial court was plainly and palpably wrong in terminating the parental rights of the mother and awarding custody to the Department of Pensions and Security. This seems to be clearly within the best interests of the children. See Handley v. State Department of Pensions andSecurity, 455 So.2d 887 (Ala.Civ.App. 1984).
Put another way, as we stated in Handley, the judgment of the trial court in this case is supported by clear and convincing evidence and conforms to the principles stated by this court in the cases of Glover v. Alabama Department of Pensions and *Page 1350 
Security, 401 So.2d 786 (Ala.Civ.App. 1981), and Miller v.Alabama Department of Pensions and Security, 374 So.2d 1370
(Ala.Civ.App.), writ quashed, 374 So.2d 1378 (Ala. 1979).
The mother additionally claims that the trial court erred in admitting evidence of her arrests. This contention is without merit.
The case cited by the mother in support of her contention isParker v. State, 280 Ala. 685, 198 So.2d 261 (1967), which addresses the impeachment of witnesses.
Here, the arrest testimony was not introduced to impeach the mother's testimony, but was used to show her past behavior so as to determine the best interests of the children. In a juvenile proceeding, the court has a wide latitude to decide which evidence it will consider. In re Shivers, 440 So.2d 1081
(Ala.Civ.App. 1983).
This case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.